IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-3276-D

REUBEN CURRY,                          )
                                       )
                Plaintiff,             )
                                       )
        v.                             )          **ORDER**
                                       )
E. RIGGS, et al.,                      )
                                       )
                Defendants.            )

On November 15, 2024, Reuben Curry ("Curry" or "plaintiff"), a state inmate proceeding

pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983, alleging violations of his

Fifth, Eighth, and Fourteenth Amendment rights [D.E. 1, 2, 7]. Curry alleges that on November

16, 2021, defendants Eric Riggs, Domanick Smith, and Stephen Fonville assaulted him while

defendant Turley "stood by as an onlooker." Compl. [D.E. 1] 5–7. Curry was "charged with

Assault on Staff . . . without proper investigation, with the approval of [defendant] Captain

Stokely." Id. at 5; see id. at 7. On December 20, 2024, the court reviewed Curry's complaint under

28 U.S.C. § 1915A and allowed the action to proceed. See [D.E. 8]. On December 5, 2025,

discovery concluded. See [D.E. 44] 2.

On January 5, 2026, defendants moved for summary judgment [D.E. 47] and filed a

memorandum in support [D.E. 48], a statement of material facts [D.E. 56], and an appendix [D.E.

49]. The court notified Curry about defendants' motion for summary judgment, the consequences

of failing to respond, and the response deadline [D.E. 53]. See Roseboro v. Garrison, 528 F.2d

309, 310 (4th Cir. 1975) (per curiam). Curry voluntarily dismissed defendant Stokley from this

action [D.E. 57, 64]. On March 30, 2026, Curry responded in opposition to defendants' motion for summary judgment [D.E. 65–67]. In his response, Curry moves to voluntarily dismiss defendant Turley from this action. See [D.E. 65] 25. The court grants the motion. See Fed. R. Civ. P. 41(a)(2). As explained below, the court denies the remaining defendants' motion for summary judgment.

I.

Curry was incarcerated at Pasquotank Correctional Institution ("PCI") on the date of the use of force incident. See Compl. 5. On November 16, 2021, Riggs, Fonville, and Smith, members of the Eastern Region Prison Emergency Response Team ("PERT"), were at PCI to conduct a random search of all inmates on Curry's housing unit for drugs or other contraband. See Riggs Decl. [D.E. 49-9] ¶¶ 3–4; Fonville Decl. [D.E. 49-10] ¶¶ 3–4; Smith Decl. [D.E. 49-11] ¶¶ 3–4. At approximately 9:00 a.m., Riggs, Fonville, and Smith entered Curry's cell and ordered him to submit to a strip search. Riggs Decl. [D.E. 49-9 ] ¶ 4; Fonville Decl. [D.E. 49-10] ¶ 4; Smith Decl. [D.E. 49-11] ¶ 4. Curry admits that he "refused to strip in the cold environment." [D.E. 67] 9. According to Curry, Riggs pepper sprayed him in the face, and Curry "then whirl[led] away" from Riggs. Id. Curry was "pinned against the bunk," and defendant Riggs continued to pepper-spray Curry in the face, creating a "drowning effect." Id. At that point, Curry was "ready to submit and comply with any directive," and he said, "all right." Id. But defendants repeatedly yelled "strip" and "stop resisting." Id. at 9–10. Although Curry had stopped resisting, defendants continued to attack Curry "with someone punching [him] from behind and someone taking ahold of [his] foot and twisting as if trying to break [his] ankle." Id. at 10.

Curry feared for his safety, managed to "break" his leg free, and tried to "escape out of the cell." Id. Curry collided with an officer blocking the doorway. Id. At least one PERT officer

then began "battering" Curry with batons on the back of his head, neck, and shoulder causing Curry to "collapse face down to the floor in a puddle of [his] own blood." Id. While Curry was face down on the floor, a defendant "forcefully dropped his knee" onto Curry's back pinning him to the floor. Id. Once Curry was restrained, he informed defendants that he could not breathe and defendants continued to apply pressure to his back for another 30 to 60 seconds. Id. at 10–11.

Defendants disagree with Curry's version of events. According to defendants, once Curry refused to comply with their direct orders to submit to the strip search, he assumed an aggressive stance and balled both fists to strike the officers. Riggs Decl. ¶¶ 5–6. Riggs then administered two short bursts of OC pepper spray to Curry's face. Id. ¶ 7. Curry pushed an officer in the chest to get around the officers and out of his cell. Id.; Fonville Decl. ¶ 5; Smith Decl. ¶ 6. In response, defendants attempted to place Curry on a flat surface to gain control, but Curry lunged away from the officers and struck his head on the corner of his sink and the rim of his toilet. Riggs Decl. ¶¶ 8–9; Fonville Decl. ¶ 7; Smith Decl. ¶ 7. Once Curry was on the ground, defendants gained control and placed Curry in restraints. Riggs Decl. ¶ 10; Fonville Decl. ¶ 8; Smith Decl. ¶ 8. Fonville injured his thumb "as a result of Plaintiff's assaultive behavior." Fonville Decl. ¶ 10.

At approximately 9:05 a.m., a nurse conducted a use of force evaluation on Curry. See Defs.' Ex. F [D.E. 50] 10–14. A few minutes later, correctional staff transported Curry to the medical clinic for an emergency encounter during which the physician noted Curry was bleeding profusely from the right side of his scalp. Id. at 6. Curry was treated for a 7.5-inch laceration to the right side of his scalp, four separate 3.5-inch "c" shaped contusions on his left back shoulder, a three-inch laceration with swelling on the back of his skull, and a scrape on his left hip. Id. at 7, 9, 11. Curry received nine stitches for the laceration to his scalp. Id. at 13. Later the same day, Curry was transported to the Central Prison Urgent Care for evaluation. Id. at 1.

Curry was charged and convicted of two disciplinary infractions regarding the November 16, 2021, incident: A3 (assault on staff with a weapon) and B25 (disobeying an order). Defs.' Ex. E [D.E. 49-6] 1–3. Curry contends that Riggs, Smith, and Fonville violated his Eighth Amendment rights. See Compl. 5–7.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248–49. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378.

Defendants submitted a video recording capturing a portion of the events that occurred on November 16, 2021. The existence of video evidence can affect the summary judgment standard. See Scott, 550 U.S. at 378; Brooks v. Johnson, 924 F.3d 104, 115 (4th Cir. 2019). Where the video contradicts the nonmoving party's version of the facts, such that no reasonable jury could believe the nonmoving party, the court must view the facts in the light depicted by the video. See Scott,

4

550 U.S. at 379–81; see, e.g., Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605 (E.D.N.C. 2009). In this case, the video recording has no sound and does not adequately record the alleged specific conduct at issue.[1] Thus, the video recording does not affect the court's summary judgment analysis.

To show that a prison official used excessive force and violated the Eighth Amendment, a prisoner must establish "more than indifference, deliberate or otherwise. The claimant must show that officials applied force maliciously and sadistically for the very purpose of causing harm." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quotations omitted); see Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). To succeed, the claimant must show that "the officials acted with a sufficiently culpable state of mind" and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (cleaned up); see Farmer, 511 U.S. at 834–36.

"The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted); see Thompson v. Virginia, 878 F.3d 89, 101 (4th Cir. 2017); United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). Factors relevant to determining the prison official's state of mind include "(1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them at the time; and (4) the efforts made to temper the severity of the force applied."

---

[1] The use of force incident occurred entirely within Curry's cell, and the surveillance video captures only the area outside of Curry's cell. See Defs.' Ex. G [D.E. 49-8]. A column obstructs the view of Curry's cell. Id.

Tedder v. Johnson, 527 F. App'x 269, 272 (4th Cir. 2013) (unpublished) (quotations omitted); see Whitley v. Albers, 475 U.S. 312, 321 (1986), abrogated on other grounds by Wilkins, 559 U.S. 34. "The objective component of an excessive force claim is not nearly as demanding . . . because when prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated, whether or not significant injury" results. Boone v. Stallings, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (unpublished) (cleaned up); Escobar-Salmeron v. Moyer, 150 F.4th 360, 372–73 (4th Cir. 2025).

Genuine issues of material fact preclude summary judgment. See, e.g., Alexander v. Connor, 105 F. 4th 174, 183 (4th Cir. 2024); Love v. Beasley, 788 F. App'x 935, 937 (4th Cir. 2020) (per curiam) (unpublished); Brooks, 924 F.3d at 114–18; Servidio v. Pittman, 632 F. App'x 747, 750 (4th Cir. 2015) (per curiam) (unpublished); Parker v. Stevenson, 625 F. App'x 196, 199 (4th Cir. 2015) (per curiam) (unpublished); Ussery v. Mansfield, 786 F.3d 332, 338 (4th Cir. 2015); Boone, 583 F. App'x at 176–77. Thus, the court denies defendants' motion for summary judgment.

Defendants also argue that they are entitled to qualified immunity. See [D.E. 48] 22–23. Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Rivas-Villegas v. Cortesluna, 595 U.S. 1, 4 (2021) (per curiam); City of Tahlequah v. Bond, 595 U.S. 9, 11–13 (2021) (per curiam); City of Escondido v. Ernmons, 586 U.S. 38, 42–44 (2019) (per curiam); Kisela v. Hughes, 584 U.S. 100, 104–08 (2018) (per curiam); District of Columbia v. Wesby, 583 U.S. 48, 62–68 (2018); Hernandez v. Mesa, 582 U.S. 548, 554 (2017) (per curiam); Ziglar v. Abbasi, 582 U.S. 120, 150–

52 (2017); White v. Pauly, 580 U.S. 73, 78–79 (2017) (per curiam); Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam); Taylor v. Barkes, 575 U.S. 822, 825–26 (2015) (per curiam); City & Cnty. of S.F. v. Sheehan, 575 U.S. 600, 611 (2015); Carroll v. Carman, 574 U.S. 13, 16–17 (2014) (per curiam); Reichle v. Howards, 566 U.S. 658, 664 (2012). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Kisela, 584 U.S. at 104; Wesby, 583 U.S. at 56; Ziglar, 582 U.S. at 152; White, 580 U.S. at 79; Mullenix, 577 U.S. at 12; Taylor, 575 U.S. at 825; Sheehan, 575 U.S. at 611; Carroll, 574 U.S. at 17.

In analyzing qualified immunity, the court asks "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right[,]" and "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (cleaned up); see Reichle, 566 U.S. at 664; Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). Courts may decide which question to address first. See Pearson, 555 U.S. at 242. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (cleaned up). Although a case need not be directly controlling, "existing precedent must have placed the statutory or constitutional question beyond debate." Id.; see Reichle, 566 U.S. at 664. Qualified immunity shields a defendant if the answer to either question is "no." See Reichle, 566 U.S. at 664; al-Kidd, 563 U.S. at 735; Bostic, 667 F. Supp. 2d at 605–06.

7

The record precludes a determination of qualified immunity at this time. See Brooks, 924 F.3d at 119; Ussery, 786 F.3d at 338; Tedder, 527 F. App'x at 274–75. Thus, the court denies defendants' motion for summary judgment as to qualified immunity.

III.

In sum, the court GRANTS plaintiff's motion to voluntarily dismiss his claims against defendant Turley under Federal Rule of Civil Procedure 41(a)(2) [D.E. 65]. The court DENIES defendants' motion for summary judgment [D.E. 47] and REFERS the action to Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference. Judge Jones will notify the parties how he wishes to proceed. The court APPOINTS North Carolina Prisoner Legal Services ("NCPLS") to assist Curry at the settlement conference. See Standing Order 21-SO-11 ¶ 7. The clerk shall send a copy of this order to notify NCPLS of its appointment. If the case fails to settle, the matter will be set for trial. The clerk is DIRECTED to update the docket to reflect the full names for defendants Eric Riggs and Domanick Smith.

SO ORDERED. This 13 day of August, 2026.

JAMES C. DEVER III
United States District Judge